**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| BEEBE MEDICAL CENTER | ) |
| 424 SAVANNAH ROAD | ) |
| LEWES, DE 19958 | ) |
| | ) |
| BETHESDA HOSPITAL | ) |
| 10500 MONTGOMERY ROAD | ) |
| CINCINNATI, OH 45242 | ) |
| | ) |
| BILLINGS CLINIC | ) |
| 2800 TENTH AVENUE NORTH | ) |
| BILLINGS, MT 59107-7000 | ) |
| | ) |
| BROOKDALE HOSPITAL MEDICAL CENTER | ) |
| 1 BROOKDALE PLAZA | ) |
| BROOKLYN, NY 11212 | ) |
| | ) |
| COMMUNITY GENERAL HOSPITAL | ) |
| 4900 BROAD ROAD | ) |
| SYRACUSE, NY 13215-2293 | ) |
| | ) |
| COMMUNITY MEDICAL CENTER | ) |
| 2827 FORT MISSOULA ROAD | ) |
| MISSOULA, MT 59804 | ) |
| | ) |
| CROUSE HOSPITAL | ) |
| 736 IRVING AVENUE | ) |
| SYRACUSE, NY 13210-1690 | ) |
| | ) |
| EL CENTRO REGIONAL MEDICAL CENTER | ) |
| 1415 ROSS AVENUE | ) |
| EL CENTRO, CA 92243-4398 | ) |
| | ) |
| ERIE COUNTY MEDICAL CENTER CORP. | ) |
| 462 GRIDER ST. | ) |
| BUFFALO, NY 14215 | ) |
| | ) |
| F. F. THOMPSON HOSPITAL | ) |
| 350 PARRISH STREET | ) |
| CANANDAIGUA, NY 14424-1793 | ) |
| | ) |
| GRIFFIN HOSPITAL | ) |
| 130 DIVISION STREET | ) |
| DERBY, CT 06418-1326 | ) |

HUDSON VALLEY HOSPITAL CENTER )
1980 CROMPOND ROAD )
CORTLAND MANOR, NY  10567 )
)
KUAKINI MEDICAL CENTER )
347 NORTH KUAKINI STREET )
HONOLULU, HI  96817-9980 )
)
LOYOLA UNIVERSITY HEALTH SYSTEM )
2160 SOUTH FIRST AVENUE )
MAYWOOD, IL  60153 )
)
MAINE COAST MEMORIAL HOSPITAL )
50 UNION STREET )
ELLSWORTH, ME  04605 )
)
MILFORD REGIONAL MEDICAL CENTER )
14 PROSPECT STREET )
MILFORD, MA  01757 )
)
MOSES TAYLOR HOSPITAL )
700 QUINCY AVENUE )
SCRANTON, PA  18510 )
)
NIAGARA FALLS MEMORIAL MEDICAL CENTER )
621 TENTH STREET )
NIAGARA FALLS, NY  14302 )
)
NYACK HOSPITAL )
160 NORTH MIDLAND AVENUE )
NYACK, NY  10960-1998 )
)
OLEAN GENERAL HOSPITAL )
515 MAIN STREET )
OLEAN, NY  14760-9912 )
)
ORANGE REGIONAL MEDICAL CENTER )
707 EAST MAIN STREET )
MIDDLETOWN, NY  10940 )
)

PACIFIC ALLIANCE MEDICAL CENTER                )
531 WEST COLLEGE STREET                         )
LOS ANGELES, CA  90012                           )
                                                 )
PACIFIC HOSPITAL OF LONG BEACH               )
2776 PACIFIC AVENUE                             )
LONG BEACH, CA  90806-2699                     )
                                                 )
PECONIC BAY MEDICAL CENTER                    )
1300 ROANOKE AVENUE                            )
RIVERHEAD, NY 11901                             )
                                                 )
REYNOLDS MEMORIAL HOSPITAL                   )
800 WHEELING AVENUE                            )
GLENDALE, WV  26038                             )
                                                 )
RICHMOND UNIVERSITY MEDICAL CENTER       )
355 BARD AVENUE                                 )
STATEN ISLAND, NY  10310                       )
                                                 )
SAINT ELIZABETH HOSPITAL                      )
2209 GENESEE STREET                             )
UTICA, NY  13501                                 )
                                                 )
SAINT FRANCIS HOSPITAL                         )
241 NORTH ROAD                                  )
POUGHKEEPSIE, NY  12601-1399                   )
                                                 )
SAINT JOSEPH'S HOSPITAL HEALTH CENTER    )
301 PROSPECT AVENUE                            )
SYRACUSE, NY  13203-1895                        )
                                                 )
SAINT JOSEPH'S MEDICAL CENTER              )
127 SOUTH BROADWAY                            )
YONKERS, NY  10701-4080                         )
                                                 )
SAINT LUKE'S CORNWALL HOSPITAL           )
70 DUBOIS STREET                                )
NEWBURGH, NY  12550                            )
                                                 )
SAINT ROSE HOSPITAL                            )
27200 CALAROGA AVENUE                         )
HAYWARD, CA  94545                             )
                                                 )

SAMARITAN MEDICAL CENTER                     )
830 WASHINGTON STREET                        )
WATERTOWN, NY  13601                         )
                                             )
SOUTHAMPTON HOSPITAL                         )
240 MEETING HOUSE LANE                       )
SOUTHAMPTON, NY  11968-5090                  )
                                             )
TEMPLE COMMUNITY HOSPITAL                    )
235 NORTH HOOVER STREET                      )
LOS ANGELES, CA  90004                       )
                                             )
THE BROOKDALE HOSPITAL MEDICAL CENTER        )
ONE BROOKDALE PLAZA                          )
BROOKLYN, NY  11212-3198                     )
                                             )
TOURO INFIRMARY                              )
1401 FOUCHER STREET                          )
NEW ORLEANS, LA  70115                       )
                                             )
TUCSON MEDICAL CENTER                        )
5301 E. GRANT ROAD                           )
TUCSON, AZ  85712                            )
                                             )
UNIONTOWN HOSPITAL                           )
500 WEST BERKELEY STREET                     )
UNIONTOWN, PA  15401-5596                    )
                                             )
VALLEY MEDICAL CENTER                        )
400 SOUTH 43RD STREET                        )
RENTON, WA  98055                            )
                                             )
VALLEY PRESBYTERIAN HOSPITAL                 )
15107 VANOWEN STREET                         )
VAN NUYS, CA  91405                          )
                                             )

VASSAR BROTHERS MEDICAL CENTER          )
45 READE PLACE                          )
POUGHKEEPSIE, NY  12601-3947            )
                                        )
THE UNIVERSITY OF CHICAGO HOSPITALS      )
5841 S. Maryland Avenue                 )
Chicago, IL 60637                       )
                                        )
ST. JOHN'S EPISCOPAL HOSPITAL           )
327 Beach 19th St                       )
Far Rockaway NY 11691                   )
                                        )
SAINT JUDE MEDICAL CENTER               )
101 E. Valencia Mesa Drive              )
Fullerton, CA 92835                     )
                                        )
GEISINGER BLOOMSBURG HOSPITAL           )
549 Fair St.                            )
Bloomsburg, PA 17815                    )
                                        )
WESTCHESTER MEDICAL CENTER              )
100 WOODS ROAD                          )
VALHALLA, NY  10595                     )
                                        )
LONG ISLAND COLLEGE HOSPITAL            )
339 Hicks Street                        )
Brooklyn, NY 11201-5509                 )
                                        )
THE BLOOMSBURG HOSPITAL                 )
549 East Fair Street                    )
Bloomsburg, PA 17815-0340               )
                                        )
                                        )
                                        )
                                        )
                                        ) Civil Action No. 1:18-cv-01613(CRC)
                Plaintiffs,             )
                                        )
        v.                              )
                                        )
ALEX M. AZAR, II, SECRETARY             )
UNITED STATES DEPARTMENT OF             )
HEALTH AND HUMAN SERVICES               )
200 INDEPENDENCE AVE., S.W.             )
WASHINGTON, DC  20201                   )
                                        )
                Defendant.              )

_____ )

## PLAINTIFFS' SECOND AMENDED COMPLAINT FOR JUDICIAL REVIEW AND DECLARATORY
## AND INJUNCTIVE RELIEF UNDER THE MEDICARE ACT

### NATURE OF ACTION

1.      The Plaintiff hospitals (the "Hospitals") challenge the Secretary of Health and Human Services' (the "Secretary") computation of the Medicare disproportionate share hospital ("DSH") adjustment relating to inpatients enrolled in a Medicare Advantage plan under Part C of the Medicare Act.  In dispute is whether Medicare "enrollees in Part C are 'entitled to benefits' under Part A, such that they should be counted in the Medicare [part A/SSI] fraction [one part of the DSH payment formula], or whether, if not regarded as 'entitled to benefits under Part A,' they should instead be included in the Medicaid fraction [the second part of the DSH payment calculus]." *Allina Health Services v. Sebelius*, 746 F.3d 1102, 1105 (D.C. Cir. 2014) ("*Allina I*"). In *Allina I*, the D.C. Circuit affirmed this Court's decision declaring invalid and vacating a procedurally invalid rule, adopted in 2004, which modified the defendant Secretary's policy on the treatment of part C days to include them the Medicare part A/SSI fraction and exclude them from the numerator of the Medicaid fraction used to calculate the DSH payment. *Id.* at 1111.

2.      Despite the 2014 decision in *Allina I* decision, the Secretary has not acquiesced in the D.C. Circuit's decision in *Allina I*. Instead, the Secretary's agency has continued to apply the 2004 rule and part C days policy adopted in that rule, including in the payment determinations at issue for the Hospitals in this case.

3.      The D.C. Circuit issued its decision in favor of the hospitals in *Allina Health Services et al. v. Price*, No. 16-5255 (July 25, 2017) (*Allina II*) (petition for rehearing by panel and en banc denied, 11/29/2017; mandate issued 12/14/2017; petition for certiorari filed

4/27/2018).[1]  The Court rejected the Secretary's procedural challenge to the decision of the Provider Reimbursement Review Board (which ordered expedited judicial review under 42 U.S.C. 1395oo(f)(1)) and held that the agency's 2013 rule (which reflected the same Part C policy of the 2004 rule) failed to comply with the notice-and-comment rulemaking provisions of the Medicare Act, 42 U.S.C. §1395hh.  Additionally, this Court denied the Secretary's motion to dismiss in *Allina Health Services et al. v. Price*, No. 16-0150(RC) (August 4, 2017) (Stayed pending whether Supreme Court grants certiorari in *Allina II*).

4.      The continued application of the 2004 rule and the part C policy adopted in that rule is procedurally invalid, as the D.C. Circuit has already ruled, and is substantively invalid as well. For the relevant period, the agency has failed to apply the policy adopted in the 2004 rule through notice-and-comment rulemaking.  Moreover, the part C policy adopted in the 2004 rule change fails any test of reasoned decision-making and is inconsistent with Congressional intent. The hospitals, therefore, seek an order setting aside the Secretary's DSH payment determinations and directing the Secretary to recalculate the Hospitals' DSH payments by excluding part C days from the Medicare part A/SSI fraction and including the Medicaid-eligible portion of those days in the numerator of the Medicaid fraction.

## JURISDICTION AND VENUE

5.      This action arises under the Medicare Act, Title XVIII of the Social Security Act, 42 U.S.C. § 1395 et seq., and the Administrative Procedure Act ("APA"), 5 U.S.C. § 551 et seq.

6.      Jurisdiction is proper under 42 U.S.C. § 1395oo(f)(l).

7.      Venue is proper in this judicial district under 42 U.S.C. § 1395oo(f)(l).

---

[1] *Alex M. Azar, II, Secretary of Health and Human Services, Applicant v. Allina Health Services et al.*, Supreme Court Docket No. 17A770. Oral argument was conducted on 1/15/2019.

## PARTIES

8.    The Hospitals in this action and Hospital fiscal years at issue are identified in the caption and the Schedule of Providers included with the decisions of the Provider Reimbursement Review Board attached as Exhibits 1, 2 and 3.[2]

9.    The defendant is Alex Azar, in his official capacity as Secretary of the United States Department of Health and Human Services ("Secretary"), the federal agency that administers the Medicare program. References to the Secretary herein are meant to refer to him, to his subordinates, and to his official predecessors or successors as the context requires.

10.    The Centers for Medicare & Medicaid Services ("CMS") is the component of the Secretary's agency with responsibility for day-to-day operation and administration of the Medicare program. CMS was formerly known as the Health Care Financing Administration. References to CMS herein are meant to refer to the agency and its predecessors.

## LEGAL AND REGULATORY BACKGROUND

### Medicare DSH Payment

11.    Part A of the Medicare Act covers "inpatient hospital services." 42 U.S.C. § 1395d(a)(l). Since 1983, the Medicare program has paid most hospitals for the operating costs of inpatient hospital services under the prospective payment system ("PPS"). 42 U.S.C. § 1395ww(d); 42 C.F.R. Part 412. Under PPS, Medicare pays predetermined, standardized amounts per discharge, subject to certain payment adjustments. *Id.* One of the PPS payment adjustments is the DSH payment. *See* 42 U.S.C. § 1395ww(d)(5)(F); 42 C.F.R. § 412.106.

12.    A hospital that serves a disproportionate share of low-income patients is entitled to an upward percentage adjustment to the standard PPS rates per discharge. *See* 42 U.S.C.

---

[2] In the event of any inconsistency between the identification of the Plaintiffs in the caption and in the Exhibits, the latter shall govern

§ 1395ww(d)(5)(F); *see also* 42 C.F.R. § 412.106. A hospital may qualify for a DSH adjustment

based on its "disproportionate patient percentage." *See* 42 U.S.C. §§ 1395ww(d)(5)(F)(i)(I) and

(d)(5)(F)(v); 42 C.F.R. § 412.106(c)(1). The disproportionate patient percentage determines both

a hospital's qualification for the DSH payment and the amount of the payment. *See* 42 U.S.C.

§§ 1395ww(d)(5)(F)(iv) and (vii)-(xiii); 42 C.F.R. § 412.106(d). The disproportionate patient

percentage is defined as the sum of two fractions expressed as percentages. 42 U.S.C.

§ 1395ww(d)(5)(F)(vi).

13.     The first fraction that is used to compute the DSH payment is commonly known

as the "Medicaid fraction." The statute defines the Medicaid fraction as:

> the fraction (expressed as a percentage), the numerator of which is the
> number of the hospital's patient days for such period which consist of
> patients who (for such days) were eligible for medical assistance under a
> State plan approved under [the Medicaid statute, title XIX of the Social
> Security Act], but who were *not entitled to benefits under part A* of [the
> Medicare statute, title XVIII of the Social Security Act], and the
> denominator of which is the total number of the hospital's patient days for
> such period.

42 U.S.C. § 1395ww(d)(5)(F)(vi)(II) (emphasis added). As reflected in the italicized language

above, the numerator of the Medicaid fraction consists of days for patients who were both

eligible for medical assistance under the Medicaid statute and "not entitled to benefits under part

A" of the Medicare statute.

14.     The other fraction that is used to compute the DSH payment is the "Medicare part

A/SSI fraction" or "SSI fraction." The statute defines this fraction as:

> the fraction (expressed as a percentage), the numerator of which is the
> number of such hospital's patient days for such period which were made
> up of patients who (for such days) were *entitled to benefits under part A* of
> [the Medicare statute] and were entitled to supplemental security income
> benefits (excluding any State supplementation) . . . , and the denominator
> of which is the number of such hospital's patient days for such fiscal year
> which were made up of patients who (for such days) were *entitled to
> benefits under part A* of [the Medicare statute]...

9

42 U.S.C. § 1395ww(d)(5)(F)(vi)(I) (emphasis added). As the italicized language indicates, the Medicare part A/SSI fraction consists solely of days for patients who were "entitled to benefits under part A" of Medicare. The denominator includes all Medicare part A days, whereas the numerator includes only those part A days for patients who are also entitled to social security income ("SSI") benefits under title XVI of the Social Security Act. The Medicare part A/SSI fraction is computed for each federal fiscal year by CMS, and must be used to compute a hospital's DSH payment for the cost reporting period beginning in the federal fiscal year. 42 C.F.R. §§ 412.106(b)(2)-(3).

### Medicare Part C

15.     Section 4001 of the Balanced Budget Act of 1997, Pub. Law No. 105-33, added a new part C to the Medicare statute to establish a Medicare program that was originally called the Medicare+Choice program and is now called Medicare Advantage.[3]  A Medicare beneficiary can elect to receive Medicare benefits either through the original fee-for-service program under Medicare parts A and B, or through enrollment in a Medicare Advantage plan under Medicare part C. 42 U.S.C. § 1395w-21(a)(1); 42 C.F.R. § 422.50; *see also* 63 Fed. Reg. 34,968, 34,968 (June 26, 1998) ("Under section 1851(a)(1), every individual entitled to Medicare Part A and enrolled under Part B ... may elect to receive benefits through *either* the existing Medicare fee-for-service program or a Part C M+C plan.") (emphasis added).

16.     Prior to the 2004 rulemaking at issue, in which the agency attempted to adopt a new policy on the treatment of part C days in the Medicare DSH payment calculation, "the Secretary treated Part C patients as *not* entitled to benefits under Part A." *Allina I*, 746 F.3d at 1106. The pre-2004 regulation limited the Medicare part A/SSI fraction to Medicare patient days

---

[3] The Medicare Prescription Drug, Improvement, and Modernization Act of 2003 (Pub. L. 108173), amended part C and renamed it.

that were covered, or paid, by Medicare part A and included other Medicare patient days (not covered under part A) in the numerator of the Medicaid fraction to the extent that those patients were also eligible for Medicaid. *See* 42 C.F.R. § 412.106(b)(2)(i) (2003); *see also* 42 C.F.R. § 409.3 (defining "covered" as services for which payment is authorized). As the Secretary explained when he adopted it, the pre-2004 regulation mandated that only "covered Medicare Part A inpatient days" be included in the part A/SSI fraction. 51 Fed. Reg. 16,772, 16,788 (May 6, 1986); *see also* 51 Fed. Reg. 31,454, 31,460-61 (Sept. 3, 1986) (stating that limiting the Medicaid fraction to days where "the Medicaid program is the primary payor" was "consistent with" the part A/SSI fraction being limited to "covered days"); *Catholic Health Initiatives-Iowa Corp. v. Sebelius*, 718 F.3d 914, 921 n.5 (D.C. Cir. 2013) (noting that the pre-2004 regulation unambiguously limited the part A/SSI fraction to "covered Medicare Part A inpatient days").

17.    Further, written guidance prior to 2004 repeatedly expressed the Secretary's policy that part C days, as days for which patients were not entitled to part A payment, were to be excluded from the part A/SSI fraction. This guidance included instructions to hospitals and program memoranda transmitting the part A/SSI fractions on an annual basis. *See, e.g*., *Northeast Hosp. Corp. v. Sebelius*, 657 F.3d 1, 15 (D.C. Cir. 2011) (describing written guidance).

18.    The agency's consistent policy and practice, before the adoption of the 2004 rule, was to treat part C days as *not* part A days. *Northeast Hosp.*, 657 F.3d at 16-17 (policy announced in 2004 "contradicts [Secretary's] former practice of excluding M+C days from the Medicare fraction"); *Sw. Consulting DSH Medicare + Choice Days Grps. v. BlueCross BlueShield Ass'n,* PRRB Dec. No. 2010–D52, 2010 WL 4211391, at *12 (Sept. 30, 2010), *reprinted in* MEDICARE & MEDICAID GUIDE (CCH) ¶ 82,679 (reviewing evidence that from 1999

to 2004, the Secretary "never count[ed] M+C days in the [Medicare] fraction except rarely, and then by mistake").

19.    In a 2003 proposed rule, the Secretary proposed "to clarify" his long-held position that "once a beneficiary elects Medicare Part C, those patient days attributable to the beneficiary should not be included in the Medicare fraction of the DSH patient percentage." 68 Fed. Reg. 27,154, 27,208 (May 19, 2003). Further, the agency explained that "[t]hese days should be included in the count of total patient days in the Medicaid fraction (the denominator), and the patient's days for a [part C] beneficiary who is also eligible for Medicaid would be included in the numerator of the Medicaid fraction." *Id.* The Secretary explained that "once a beneficiary has elected to join a Medicare Advantage plan, that beneficiary's benefits are no longer administered under Part A." *Id.*

20.    In the preamble to a final rule adopted in 2004, however, the Secretary reversed course and "abruptly announced a change in policy." *Allina Health Servs. v. Sebelius*, 904 F. Supp. 2d 75, 78 (D.D.C. 2012), *aff'd*, 746 F.3d at 1107-10. That 2004 rule announced that the Secretary would "adopt a policy" to include part C days in the Medicare part A/SSI fraction and exclude them from the Medicaid fraction effective October 1, 2004. 69 Fed. Reg. 48,916, 49,099 (Aug. 11, 2004); *see also Northeast Hosp.*, 657 F.3d at 16 ("[I]n the 2004 rulemaking [the Secretary] announced that she was 'adopting a policy' of counting [part C] days in the Medicare fraction").

21.    In the 2004 final rule, the Secretary amended the regulation text by deleting the word "covered." 69 Fed. Reg. at 49,246. When CMS initially transmitted the part A/SSI fractions for federal fiscal years 2005 and 2006, however, those fractions continued to exclude part C days. *See* CMS Pub. 100-04, Transmittal 1091 (Oct. 27, 2006), *reprinted in* MEDICARE &

MEDICAID GUIDE (CCH) ¶ 156,277 (transmitting federal fiscal year 2005 part A/SSI fractions and specifying that the fractions include only "covered Medicare days," and referring to the ratio of SSI days and "covered Medicare days" as "the ratio of Medicare Part A patient days attributable to SSI recipients"); CMS Pub. 100-04, Transmittal 1396 (Dec. 14, 2007), *reprinted in id*. ¶ 156,930 (same for federal fiscal year 2006 fractions).

22.    In July 2007, CMS issued a revision to a Medicare program manual, with a "purported 'effective date' of October 1, 2006," that permitted hospitals to submit the data necessary to implement the new policy regarding part C days. *Allina Health Servs.*, 904 F. Supp. 2d at 82. Thereafter, in August 2007, the Secretary further amended the text of the DSH regulation governing part C days without affording hospitals prior notice or opportunity for comment. 72 Fed. Reg. 47,130, 47,384 (Aug. 22, 2007). Following the amendments in 2004 and 2007, the regulation provided that the part A/SSI fraction includes all patient days (not just "covered" days) for "patients entitled to Medicare Part A (*or Medicare Advantage (Part C)*)." *Id.* at 47,411 (amending §§ 412.106(b)(2)(i)(B) and (iii)(B)) (emphasis added). The amendment of the regulation was made effective October 1, 2007, the beginning of federal fiscal year 2008. *Id.* at 47,130; *see also Allina Health Servs.*, 904 F. Supp. 2d at 82.

## The *Allina I* Litigation

23.    In July 2009, the Secretary first published part A/SSI fractions for hospital cost reporting periods beginning in federal fiscal year 2007. These fractions for the first time included part C days.

24.    In *Allina I*, hospitals challenged the applicability of the 2004 rule on the treatment of part C days in the DSH payment calculation for cost reporting periods beginning in federal fiscal year 2007, contending, among other things, that the abrupt reversal in policy did not meet

notice and comment requirements and was not the product of reasoned decision making because the agency failed to acknowledge or explain its departure from past policy.

25.    This Court agreed and held that the policy announced in the 2004 final rule regarding part C days was not the logical outgrowth of the 2003 proposed rule. 904 F. Supp. 2d at 89-92. This Court also held that the "cursory explanation in the 2004 Final Rule failed to meet the requirements of the APA" because "the Secretary[] fail[ed] to acknowledge her 'about-face,'" and "her reasoning for the change was brief and unconvincing." *Id.* at 93 (quoting *Northeast Hosp.*, 657 F.3d at 15). Accordingly, this Court concluded that "[t]he portion of the 2004 Final Rule ... that announced the Secretary's interpretation of the Medicare Disproportionate Share Hospital Fraction, as codified in 2007 at 42 C.F.R. § 412.106(b)(2) and as further modified in 2010, will be vacated, and the case will be remanded to the Secretary for further action consistent with this Opinion." *Id.* at 95.

26.    On April 1, 2014, the D.C. Circuit affirmed this Court's *Allina I* decision on the merits, "agree[ing] with the district court that the Secretary's final rule was not a logical outgrowth of the proposed rule." 746 F.3d at 1109. Because this procedural failure was a sufficient basis to vacate the rule, the D.C. Circuit did not reach the arbitrariness of the Secretary's explanation. *Id.* at 1111.

27.    With respect to remedy, the D.C. Circuit held that this Court "correctly concluded that vacatur was warranted." *Id.* The court reversed, however, a part of this Court's order that required "the Secretary to recalculate the hospitals' reimbursements 'without using the interpretation set forth in the 2004 Final Rule.'" *Id.* (quoting the Post-Judgment Order). The Court of Appeals instead remanded, noting that the "question whether the Secretary could reach the same result" on remand as would have applied under the vacated rule "was not before the

district court" and therefore this Court should have simply "remand[ed] after identifying the error." *Id.* at 1111.

28.    Following remand, the *Allina* plaintiffs commenced suit in this Court, which denied the Secretary's motion to dismiss in *Allina Health Services et al. v. Price*, No. 16-0150(RC) (August 4, 2017) (Stayed pending decision of Secretary whether to request rehearing in *Allina II* [Minute Order 8/17/2017]).

<u>The *Allina II* Litigation</u>

29.    While the Secretary's appeal from this Court's decision in *Allina I* was pending before the Court of Appeals, the agency engaged in a new rulemaking on the treatment of part C days effective only prospectively, beginning October 1, 2013. In that rulemaking, the agency "proposed to readopt the policy of counting the days of patients enrolled in [part C] plans in the Medicare fraction" "in an abundance of caution." 78 Fed. Reg. 50,496, 50,615 (Aug. 19, 2013). Accordingly, effective as of October 1, 2013, the rule governing the DSH calculation is the same as the 2004 rule had been. *See id.* at 50,619 (rule "readopt[ion]" applies to "FY 2014 and subsequent years" only).

30.    As noted *supra*, the D.C. Circuit issued a decision holding that the Secretary's 2013 rule failed to comply with the notice-and-comment rulemaking requirements of 42 U.S.C. § 1395hh. *Allina Health Services et al. v. Price*, No. 16-5255 (July 25, 2017) (*Allina II*). (petition for rehearing by panel and en banc denied, 11/29/2017; mandate issued 12/14/2017; petition for certiorari filed 4/27/2018).[4] The Court stated in conclusion as follows:

> Section 1395hh(a)(4) applies with full force here. This Court vacated HHS's 2004 rule treating Part C enrollees as "entitled to benefits under Part A" because the 2004 rule "was not a logical

---

[4] *Alex M. Azar, II, Secretary of Health and Human Services, Applicant v. Allina Health Services et al.*, Supreme Court Docket No. 17A770. Oral argument conducted on 1/15/2019.

outgrowth of the proposed rule." *Allina I*, 746 F.3d at 1109. HHS therefore had to provide a "further opportunity for public comment and a publication of the provision again as a final regulation" before HHS could reimpose the rule. 42 U.S.C. § 1395hh(a)(4). HHS did not do so. And HHS could not circumvent this requirement by claiming that it was acting by way of adjudication rather than rulemaking. The statutory text says that the vacated rule may not "take effect" at all until there has been notice and comment.

Slip. Op. at 17.

## Review of Medicare Payment Determinations

31.     After the close of each fiscal year, a hospital is required to file a "cost report" with a Medicare Administrative Contractor designated by the Secretary. 42 C.F.R. §§ 413.20, 413.24.

32.     The Medicare Administrative Contractor analyzes a hospital's cost report and issues a year-end determination as to the amount of Medicare program reimbursement due the hospital for services furnished to Medicare patients during the fiscal year covered by the cost report. *See* 42 C.F.R. § 405.1803; *see also In re Medicare Reimbursement Litig.,* 309 F. Supp. 2d 89, 92 (D.D.C. 2004), *aff'd,* 414 F.3d 7 (D.C. Cir. 2005).

33.     A hospital may appeal a Medicare Administrative Contractor's determination as to the total amount of Medicare program reimbursement due the hospital for the fiscal year covered by a cost report to the Secretary's Provider Reimbursement Review PRRB ("PRRB"). *See* 42 U.S.C. § 1395oo(a)(1); 42 C.F.R. §§ 405.1835–405.1877.

34.     The Medicare statute authorizes the PRRB to determine that it is without authority to decide the question of law or regulations relevant to a matter in controversy in an appeal before the PRRB and grant the right to expedited judicial review. 42 U.S.C. § 1395oo(f)(1). Pursuant to the Secretary's regulations, the PRRB is bound by agency rules and rulings, like the 2004 rule at issue. 42 C.F.R. § 405.1867. If the PRRB determines that expedited judicial review

is appropriate, then the hospital may commence a civil action in this Court within 60 days of the date on which the hospital receives notification of the PRRB's determination. *Id.*

## FACTS SPECIFIC TO THIS CASE[5]

35.    Each of the Hospitals received a notice of program reimbursement including a final DSH payment determination for each of the cost reporting periods at issue.

36.    Each of the Hospitals timely appealed the calculation of its Medicare DSH payment to the PRRB.

37.    Each of the Hospitals was involved in one or more of group appeals to the PRRB contesting the calculation of the Medicare DSH payment including part C days in the Medicare part A/SSI fraction and excluding them from the numerator of the Medicaid fraction.

38.    On June 8, 2018 and January 28, 2019 the Hospitals requested that the PRRB grant expedited judicial review with respect to the DSH part C days issue pending in their group appeals at issue.

39.    By letters dated June 20, June 21, 2018, February 8, 2019 and March 19, 2019, the PRRB found that the Secretary has not acquiesced in in the decision in *Allina I*, that it was bound by the terms of the DSH regulation regarding the treatment of part C days, as amended in the 2004 rule, 42 C.F.R. § 412.106(b)(2)(i)(B) and (b)(2)(iii)(B), and that the PRRB therefore was without authority to decide the validity of the DSH part C policy adopted in the 2004 rule and applied in the payment determinations at issue.  (Exhibits 1, 2, 3, 4 and 5.)

40.    By the filing of this Complaint, the Hospitals have timely commenced this action for expedited judicial review under 42 U.S.C. § 1395oo(f)(1).

---

[5] The documents supporting this statement of facts will be contained in the Administrative Record excerpts to be filed with the Court.

## ASSIGNMENT OF ERRORS

41.     The Medicare statute provides for judicial review of the question presented here "pursuant to the applicable provisions under chapter 7 of title 5," *i.e.*, the APA. 42 U.S.C. § 1395oo(f)(l).

42.     The applicable provisions of the APA provide that the "reviewing court shall . . . hold unlawful and set aside agency action . . . found to be . . . (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; . . .(C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (D) without observance of procedure required by law; [or] (E) unsupported by substantial evidence[.]" 5 U.S.C. § 706(2).

43.     The Secretary's calculation of the Hospitals' DSH payments is procedurally invalid under the Medicare Act, 42 U.S.C. § 1395hh, and the APA, 5 U.S.C. § 553, including for the reasons described below.

44.     The Secretary's DSH determinations are procedurally invalid under the Medicare Act, 42 U.S.C. § 1395hh. The Medicare Act requires notice and comment rulemaking for a "rule," a "requirement" or a "statement of policy" that "establishes or changes a substantive legal standard governing ... the payment for services." 42 U.S.C. § 1395hh(a)(2). Further, the Medicare Act provides that if a final rule is not a logical outgrowth of a proposed rule, then it "shall not take effect" until there is further opportunity for comment and publication again as a final rule. *Id*. § 1395hh(a)(4). This Court has already ruled, and the Court of Appeals has affirmed this Court's ruling, that the 2004 rule was not a logical outgrowth of the proposed rule. Moreover in *Allina II* the D.C. Circuit ruled that the Secretary's 2013 rule failed to comply with 42 U.S.C. § 1395hh.

45.     The Secretary's DSH payment determinations are invalid under the APA because they conflict with the rule, policy and practice that was in effect before the adoption of the

invalid 2004 rule and is reinstated upon invalidation of that rule. *Action on Smoking & Health v. Civil Aeronautics Bd.,* 713 F.2d 795, 797-98 (D.C. Cir. 1983) ("[B]y vacating or rescinding [one rule], the judgment of this court had the effect of reinstating the rules previously in force."). The pre-2004 rule excluded part C days from the part A/SSI fraction and included them in the Medicaid fraction because it permitted only "covered Medicare Part A inpatient days" to be included in the part A/SSI fraction. The pre-2004 rule, therefore, is binding on the Secretary. It is "'axiomatic that an agency must adhere to its own regulations.'" *Exportal Ltda v. United States*, 902 F.2d 45, 49 (D.C. Cir. 1990) (quoting *Brock v. Cathedral Bluffs Shale Oil Co.*, 796 F.2d 533, 536 (D.C. Cir. 1986) (Scalia, J.)). "[U]nless and until [an agency] amends or repeals a valid legislative rule or regulation, [the] agency is bound by such a rule or regulation," *Am. Fed'n of Gov't Emps. v. Fed. Labor Relations Auth.*, 777 F.2d 751, 759 (D.C. Cir. 1985).

46.    The Secretary's DSH payment determinations are substantively invalid because the agency did not "consider the matter in a detailed and reasoned fashion" in adopting the 2004 rule (or otherwise) and the part C days policy adopted in that rule is not "consistent with the underlying statutory scheme in a substantive sense." *ITT Indus., Inc. v. NLRB*, 251 F.3d 995, 1004 (D.C. Cir. 2001). Further, the Secretary has not acknowledged that the policy adopted in the 2004 rule departed from the pre-existing rule and practice regarding the treatment of part C days in the DSH payment and has not explained any good reason for that change. *See FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009). Likewise, the Secretary has never acknowledged the enormous adverse financial impact on hospitals of the 2004 policy change, nor has the Secretary ever explained why the policy change is appropriate despite that adverse impact on the nation's safety-net hospitals, like the Hospitals, that shoulder the financial burden of treating a disproportionate share of low-income patients.

47.     The Secretary's new policy treating part C days as part A days is also contrary to the intent of Congress in enacting the DSH statute and fails the reasonableness test under *Chevron* step two. *See Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984). The policy "conflict[s] with the policy judgments that undergird the statutory scheme." *Health Ins. Ass'n of Am., Inc. v. Shalala*, 23 F.3d 412, 416 (D.C. Cir. 1994), and is impermissible, *see Goldstein v. SEC*, 451 F.3d 873, 883 (D.C. Cir. 2006) (rejecting policy under *Chevron* step two where it was not "rational when viewed in light of the policy goals underlying the" applicable statute).

## REQUEST FOR RELIEF

48.     The Hospitals request an Order:

a.      declaring invalid and setting aside the Secretary's final decision including part C days in the part A/SSI fraction and excluding part C patient days from the numerator of the Medicaid fraction used to calculate the Hospitals' Medicare DSH calculations for the cost reporting periods at issue;

b.      directing the Secretary to recalculate the Hospitals' DSH payments consistent with that Order and to make prompt payment of any additional amounts due the Hospitals, plus interest calculated in accordance with 42 U.S.C. § 1395oo(f)(2);

c.      requiring the Secretary to pay legal fees and cost of suit incurred by the Hospitals; and

d.      providing such other relief as the Court may consider appropriate.

Respectfully Submitted,

_____
Kenneth R. Marcus

DC Bar No. MI-0016
HONIGMAN LLP
660 Woodward Avenue, Suite 2290
Detroit, Michigan 48226
Phone: (313) 465-7470
Fax: (313) 465-7471
kmarcus@honigman.com
Counsel for Plaintiffs

Dated: March 20, 2019

30233681.1